· In re MUNRO.

(District Court, N. D. New York. July 15, 1912.)

BANKRUPTCY (§ 424*) — DEBTS UNAFFECTED BY DISCHARGE — LIABILITY FOR "WILLFUL AND MALICIOUS INJURY."

Where a lessee assigned his lease to his wife, and the landlord recognized her as the actual tenant and subsequently obtained possession under process of dispossession issued against the lessee and retained possession against the wife wrongfully and by means of force and threats inspiring fear, a judgment for the wife against the landlord in forcible detainer, entered on a verdict returned under instructions allowing only a recovery for the value of the lease for the term above the rent to be paid, was for a liability for "willful and malicious injury" to property rights within Bankruptcy Act July 1, 1898, c. 541, § 17, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), providing that a discharge in bankruptcy does not release the bankrupt from judgments for willful and malicious injuries to the property of another, though there was no evidence of express malice, and though express malice could not be implied from the forcible detainer, since there was a disregard of the duty which the landlord owed to the wife.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 787, 818; Dec. Dig. § 424.*

For other definitions, see Words and Phrases, vol. 8, pp. 7468–7481, 7835, 7836.]

In the matter of John C. Munro, a bankrupt. On application for an order staying Kittie Fults from the further prosecution of proceedings supplementary to execution, based on a judgment recovered by

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

her against the bankrupt prior to his bankruptcy, and enjoining her from further prosecuting a replevin action in the state court. Denied.

Thomas Woods, of Syracuse, N. Y., for the bankrupt.

Harry H. Stone and Benj. Stolz, both of Syracuse, N. Y., for Kittie Fults.

RAY, District Judge. This matter was before me at the April term, and I held that the judgment for damages against Munro in an action for the forcible detention of real estate is not dischargeable in bankruptcy. See Matter of John C. Munro (D. C.) 195 Fed. 817.

The action for the forcible detainer in question was twice tried, and the second trial resulted in the present judgment against the bankrupt on and under which the supplementary proceedings are being prosecuted. On the first trial the plaintiff was not permitted to recover; the theory being that, as there was no forcible entry, there could be no recovery for the forcible detainer. The Court of Appeals reversed. On the first hearing the record of the second trial was not before me, and from the record of the first trial I assumed that on the second recovery was allowed for the injury to both person and property as well as deprivation of the use of the farm. The court on the second trial said:

"I will hold that the rule of damages is the value of the unexpired term of the lease."

And to the jury the learned judge said:

"Now the question will be, if you find for the plaintiff, what was the value of the unexpired term of that lease (lease of the farm) less what she had to pay under the lease to Mr. Munro, if this lease had been fully carried out."

This was reiterated in the charge in a different form. The plaintiff was allowed to recover simply the value of the lease for the term over and above the rent to be paid; nothing for damages to her person or household goods forcibly removed from the premises and stacked in the public highway. The question whether the plaintiff was forcibly detained from the premises or the premises forcibly detained from her by acts inspiring fear, etc., was submitted to the jury as follows:

"And the question that we are trying here is purely and simply what damages, if any, did Mrs. Fults sustain by reason of being kept out of possession of that farm, if you find that the detention was forcible as against her. There is a sharp conflict in the evidence upon this subject between these parties. Mrs. Fults says that after she returned from the city she was forbidden to go onto the premises; that she was not permitted to go on to get some puppies that she had there; that her household furniture, farm implements, horses, and everything she owned was transferred from the farm to the opposite side of the road; that she stayed there all night, with her husband; that during that night a Mr. Lockwood, who had been engaged by Mr. Munro, as it is claimed by the plaintiff, to keep her out of possession of the premises, patrolled the premises and the street near to her, remaining there all night, and firing off a gun occasionally—three times I believe she stated, twice along about 8 or 9 o'clock, and once toward midnight, wishing you to infer from that evidence that Lockwood was there with his gun to keep her off from the premises and to retain the premises in the possession of Mr. Munro —and that by reason of the fear that she had that night she did not under-

take to return to or enter upon the premises. Mrs. Fults is corroborated in this respect by her son, who testified that he heard the gun go off in the nighttime, I think he said twice; and I believe that Mr. Hill, her father, testified to hearing a gun fired in the nighttime. Now, if you find that she was kept out of possession of the property, she having been wrongfully put off—that is, she, being the owner of the lease—could not be removed by the officer because the proceedings were brought against her husband; if she was kept out of possession of the premises to which the law says she was justly entitled, during that night, by threats or by fear brought about or instigated by Mr. Munro or anybody under him, then you would find or might find upon the evidence that there was a wrongful detention of this property, a forcible detainer of the property. If, on the other hand, you should find that there was no forcible detainer, that Mr. Munro had gotten into possession of the property, and Mrs. Fults quietly gave it up or surrendered it after she had found herself out, you could not find that there was a forcible detainer of it.

"The defendant says that there was no force exercised on that occasion, that nothing was done by him to intimidate Mrs. Fults, that it is true that he employed Mr. Lockwood to stay there to watch the property that night, and that was all, he claims, that he did, and that he knew nothing of any threats or any force being exercised, or any intimidation as against Mrs. Fults. Mr. Lockwood, who was there, tells us that he did stay up all night, that he was on the premises, that the only implement or weapon that he had on that occasion was a piece of a thill that he carried in his hand. He did not say as a walking stick, but you saw the old man, and you may say whether he was carrying it as a walking stick, as a protection to himself. He says he did not have any gun there, rifle, shotgun, or firearm of any kind, and did not fire any that night. Other witnesses were called who were in that locality, who testify that they did not hear any gun fired that night. You will remember what the witnesses said with respect to that. If you find that there was not any force used by Mr. Munro or those under him, that Mrs. Fults was not intimidated, did not suffer any fear of bodily injury to herself or to her family—that is, if she was not afraid to go back into the house or onto the premises on that occasion—you could not find that there was any forcible detention of the property that night.

"If you find for the plaintiff on this subject, that there was a forcible detainer of that property, then you will come to the question of how much damages she sustained by reason of that detainer, by reason of being kept out of possession of the property."

The jury found for the plaintiff on this question and fixed the value of the unexpired term of the lease as the damages under the ruling of the court, and these damages were trebled under the statute. In short the plaintiff was by force and threats and fear inspired thereby kept out of the possession of the home and farm to the possession of which she was entitled. There was in fact injury to her person and property, for she with her stock and other property was put and kept in the public highway and deprived of shelter, but she was not allowed to recover damages therefor. She was injured in her property, for she had a property right in the farm for the term of which she was deprived by these acts.

Section 17 of the bankruptcy act provides that:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts (and this was a provable debt being in a judgment) except such as * * * are *liabilities* for * * * willful and malicious injuries to the person or property of another," etc.

The judgment in question is not a liability for any injury to the person of the plaintiff, as she was not permitted to have damages

therefor. The judgment is not a liability for any actual physical damage to property, as the plaintiff was not allowed to recover therefor. The premises and growing crops were not injured. The right of the plaintiff to be in and on the premises was taken from her, however, and she was thus injured in her property by being forcibly kept out of its use and possession and enjoyment. Is this a liability for a "willful and malicious injury" to the property of the plaintiff? Is the nature and quality of this liability determined by the nature of the action or by the nature of the damages allowed and recovered? And if the latter, is the value of an unexpired term under a lease of real estate of which a plaintiff was deprived by the forcible and wrongful detention of such real estate (such detention being effected by force, threats, and fear inspired thereby) a liability for a willful and malicious injury to property? In Tinker v. Colwell, 193 U. S. 473, 24 Sup. Ct. 505, 48 L. Ed. 754, the husband recovered damages for the injury sustained by him by reason of criminal conversation had by defendant with his wife to which the wife consented. There was no physical injury to the wife, and the husband was not actually deprived of her society or services. The court laid stress on the fact that the defendant's act constituted an assault on the wife. The court said:

"We are of opinion that it was not released. We think the authorities show the husband has certain personal and exclusive rights with regard to the person of his wife which are interfered with and invaded by criminal conversation with her; that such an act on the part of another man constitutes an assault even when, as is almost universally the case as proved, the wife in fact consents to the act, because the wife is in law incapable of giving any consent to affect the husband's rights as against the wrongdoer; and that an assault of this nature may properly be described as an injury to the personal rights and property of the husband, which is both malicious and willful. A judgment upon such a cause of action is not released by the defendant's discharge in bankruptcy."

Here there was an injury to the personal *rights* and property of Mrs. Fults. The acts done were unlawful and willful because done without authority of law and intentionally, voluntarily, and knowingly. There was no evidence of express malice in the case, and express malice cannot be implied from forcible detainer. But the existence of express or special malice was not necessary. Tinker v. Colwell, supra. There was a disregard of the duty which the defendant Munro owed to the plaintiff, and the forcible acts and fear inspired thereby worked her an injury in her property rights, and the damages recovered are the measure of the value of that right of which she was deprived and the legal compensation for that injury. Legal malice is made out, implied, when a wrongful act is done intentionally and without just cause or excuse. See cases cited in former opinion.

In this case it is not at all probable that Munro had any conscious intent to violate the law or to do Mrs. Fults harm in her property rights. The written lease was between the husband and Munro, but she was the assignee thereof, and Munro had recognized her as the actual tenant. He was put in possession peaceably by the officer with process of dispossession issued against the husband. He retained possession against the wife, the tenant entitled to possession, wrong-

fully and unlawfully and by means of force and threats inspiring fear. He was bound to know the law, and his ignorance was no defense to the wrong done. Munro's possession, although gained peaceably, was wrongful. He maintained such wrongful possession by force at his peril. In Tinker v. Colwell the defendant knowingly and consciously did the act and thereby invaded the property rights of the plaintiff. His acts were willfully and knowingly done. He was bound to know that he was doing the husband a legal actionable wrong whether in fact he actually knew it or not. True, in that case the act done was immoral, but the decision of the Supreme Court does not rest on the immorality of the act. The decision in Tinker v. Colwell seems to rest on the fundamental proposition that an assault was committed on the wife in whose person the husband had a property right, and that by such *assault* his property rights were invaded and interfered with. Here Mrs. Fults had property rights in the farm, but no injury was done to that, or the crops thereon which belonged to Mrs. Fults. But her person was interfered with and by force and threats deprived of the shelter of the house and the enjoyment of the growing crops. The rule of damages adopted was the value of such use and occupation and enjoyment. In this case there was a rule for measuring the damage with some certainty. In Tinker v. Colwell, it was not the damage done to the person of the wife that furnished a basis for damages, but the interference with the exclusive rights of the plaintiff in the person of his wife which were interfered with. From the nature and quality of the acts done by Munro the law implies malice. From their doing, Mrs. Fults was deprived of the shelter, use, and enjoyment of the house and the use and enjoyment of the crops and pasturage and the value thereof is her damage. The liability is therefore for a "willful and malicious (malice implied) injury" to the property rights of Mrs. Fults, but not actual injury to the specific property to the use and enjoyment of which she was entitled and of which she was deprived.

In this case Munro unlawfully retained possession of and appropriated to his own use by means of force, threats, and the fear inspired thereby, the property of Mrs. Fults. In the Tinker Case the defendant took possession of and appropriated to his own uses and purposes the person of the plaintiff's wife in which he had certain personal and exclusive rights. I am compelled therefore to adhere to my former decision and hold that this judgment is not dischargeable in bankruptcy.

Ordered accordingly.