Frangos *v.* Frangos, Appellant, et al.

Argued December 12, 1944. Before KELLER, P. J.,

88

BALDRIGE, RHODES, HIRT and RENO, JJ. (JAMES, J., absent).

*Walter L. Peters,* with him *George F. Coffin, Jr.,* for appellant.

*Calvin F. Smith,* for appellee.

OPINION BY HIRT, J., March 5, 1945:

Plaintiff had a money judgment against the defendant Nick D. Frangos. In this proceeding the court refused to strike off a writ of fieri facias issued thereon. The question (properly one for a State court, *In re Fuller,* 18 F. Supp. 394) is whether this defendant's discharge in bankruptcy is a bar to execution process to collect the judgment.

These are the material facts: Plaintiff had sold his restaurant business in Easton and had taken from the purchaser 23 notes of $50 each. Before returning to his native Greece in 1933 he gave the notes to his cousin the defendant Nick D. Frangos, but only for collection. Nick collected the notes in full as they came due but converted the entire proceeds to his own use. Judgment was entered in favor of plaintiff against Nick for $1,150 the total amount converted, together with interest, as an incident in an action in equity for a partnership accounting, to put at rest all controversies between the parties. There was no appeal from that judgment entered by the court en banc on December 2,

1940. Nick later on his petition was declared bankrupt. The judgment was a provable debt, but though plaintiff had notice he did not file a claim against the bankrupt estate. In June 1942 Nick was discharged by the bankruptcy court. Some time later the writ of execution in question was issued and a levy was made on restaurant property acquired by Nick after his discharge in bankruptcy.

Section 17 of the Bankruptcy Act of July 1, 1898 as last amended June 22, 1938, c. 575, 11 U. S. C. A. 35 in part provides: "(a) a discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ...... (2) are liabilities for obtaining money or property by false pretences or false representations, or for willful and malicious injuries to the person or property of another ......; (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity; ......" It is established (though perhaps not too logically by a long line of cases referred to in *Davis v. Aetna Acceptance Co.*, 293 U. S. 328, 55 S. Ct. 151) that an agent who makes collections for his principal and converts the proceeds is not a trustee or a fiduciary within the language of the exception created by subsection 4 of the Act. But it is just as firmly established and with the same finality that an agent who willfully and maliciously converts money belonging to another to his own use, is chargeable with injuring the property of that other within the intent of subsection 2. Cf. *McIntyre v. Kavanaugh*, 242 U. S. 138, 37 S. Ct. 38, a leading case. It is not necessary that the cause of action be based upon ill-will or special malice. *Tinker v. Colwell*, 193 U. S. 473, 24 S. Ct. 505.

No testimony was taken in the present proceeding but the facts above referred to were before the court by stipulation. And in addition, the record in the equity case including the testimony and the pleadings

was made a part of this proceeding by agreement of counsel. The judgment established that Nick had collected the notes and had refused to remit the proceeds to plaintiff and the court in the present proceeding found that "the inference that Nick D. Frangos refused to make the payments willfully and maliciously is not only reasonable but irresistible." Upon that conclusion the court refused to set the fi. fa. aside.

We are not impressed by the tenuous argument that the common pleas could not conclude that plaintiff's claim was within the exemption of subsection 2 because the equity court which entered the judgment did not specifically find that the conversion was willful and malicious. In that proceeding the question was whether Nick owed plaintiff $1,150 with interest; his state of mind in withholding payment was not in issue. There was no good reason for the equity court to consider that question involving immaterial subsidiary or ancillary facts. Cf. *First Nat. Bk. of Plymouth v. Jones' Est.*, 334 Pa. 577, 6 A. 2d 273. In this proceeding on the fi. fa. the court had the record in the equity case before it as much so as though the testimony had been taken de novo and it was for it to draw inferences reasonably deducible from the whole record applicable to the issues here. 8 C. J. S. Bankruptcy, §§579, 587. Of course, the presumption is that a bankrupt is discharged from all his debts and a plaintiff who seeks to bring himself within an exception of the Bankruptcy Act has the burden of proof (1 Collier on Bankruptcy, 14th ed. p. 1652) but that burden has been met by this plaintiff. There is ample evidence that Nick's failure to keep faith with his principal was willful and malicious, sufficient to sustain the court's finding to that effect. The lower court stressed one incident: In 1934 (whether before or after any of the notes became due, does not appear) plaintiff wrote Nick requesting a loan. Nick replied that he was without funds but indicated that he would insist upon payment of the notes when due

and promised to remit the proceeds promptly when received. His failure to perform his trust in the light of his promise certainly was willful, and it is a fair inference that the conversion of the entire proceeds was fraudulent, and therefore malicious in the sense of a wrongful act intentionally and deliberately done wholly without justification or excuse.

Other circumstances support that conclusion bringing plaintiff's judgment within the class of subsection 2 of the Act, unaffected by this appellant's discharge in bankruptcy.

Order affirmed at the costs of appellant.