## UNITED STATES v. STINNETT.

Civ. A. No. 8666.

United States District Court
E. D. Michigan, S. D.

Feb. 26, 1953.

As Amended March 20, 1953.

Paul Marshall, Cleveland, Ohio, for plaintiff.

O. Edgar Gambin, Detroit, Mich., for defendant.

THORNTON, District Judge.

This is an action by the United States of America under Sections 205 and 206(b) of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, §§ 1881–1906, and Public Law 31, 81st Congress, First Session, wherein the Government is claiming total rental overcharges in the sum of $445, and statutory overcharges within twelve months before suit of $116.

■ In the trial of the cause plaintiff offered testimony that established total overcharges in the amount of $442.50, and statutory overcharges within twelve months before suit in the total amount of $116. The defendant was called by the plaintiff on cross-examination, and at the conclusion of his cross-examination he failed to assume the burden of showing that his conduct was free from willfulness, and that he exercised reasonable precautions to avoid the occurrence of the violations. The failure on his part to prove lack of willfulness leaves the Court no discretion but to grant liquidated damages under the Act, so, accordingly, judgment may be entered in the sum of $442.50 by way of restitution to the tenants, and $232 as liquidated damages.

In addition to the general denial of the complaint of the Government in the within cause, the defendant, by way of affirmative defense, alleged the following:

"The defendant alleges that he set forth in his bankruptcy schedules the claim of the United States of America under this OPA alleged overcharge and that the Office of Housing Expediter was given full notice thereof, appeared in person through one of its attorneys, but failed to file any written objections or any specifications in objection to discharge in bankruptcy."

"That the last date for filing the said objections or specifications in opposition to discharge had been extended beyond November 14, 1950 and that an order of the bankruptcy court discharging the defendant had been entered on or about March 28, 1951, and that a true copy of said discharge had been promptly forwarded to the Office of Housing Expediter and the said discharge was also called to the attention of the Clerk of this court."

"That no proceedings whatsoever have been taken by the Office of Housing Expediter to set aside the said discharge nor in the interim has any motion been made by the Office of the Housing Expediter to this court for any restrictions in regard to said discharge."

■ The defendant cannot now take advantage of the inactivity of the plaintiff in the bankruptcy matter since the question as to whether the claim upon which this judgment is grounded is or is not dischargeable in bankruptcy is for the determination of this Court and not for the Bankruptcy Court.

"A discharge in bankruptcy can only affect such debts that are dischargeable under the Bankruptcy Law. Whether or not a claim is dischargeable in bankruptcy after the order of discharge has been made is not to be determined by the bankruptcy Court but by the Court in which the judgment was obtained, therefore the Referee could not and did not determine the question whether or not the debts were dischargeable in bankruptcy. Such question should be determined in this action in which the judgments were obtained." Francine v. Babayan, D.C., 45 F.Supp. 321, 322.

Sec. 901 of the Emergency Price Control Act of 1942, Title 50 U.S.C.A.Appendix, § 901, reads in part as follows:

"It is hereby declared to be in the interest of the national defense and security and necessary to the effective

prosecution of the present war, and the purposes of this Act are, to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; to assure that defense appropriations are not dissipated by excessive prices; to protect persons with relatively fixed and limited incomes, consumers, wage earners, investors, and persons dependent on life insurance, annuities, and pensions, from undue impairment of their standard of living; to prevent hardships to persons engaged in business, to schools, universities, and other institutions, * *."

and in Sec. 1891, Title 50 U.S.C.A.Appendix, under date of June 30, 1947, we find Congress declaring in part as follows:

"At the same time the Congress recognizes that an emergency exists and that, for the prevention of inflation and for the achievement of a reasonable stability in the general level of rents during the transition period, as well as the attainment of other salutary objectives of the above-named Act * * * it is necessary for a limited time to impose certain restrictions upon rents charged for rental housing accommodations in defense-rental areas. * * *"

The Emergency Price Control Act of 1942 was promulgated by Congress, in a time of national emergency, in the interest of the national defense and security, and as necessary to the effective prosecution of the then existing war; as of June 30, 1947, Congress still recognized that an emergency was in existence, and that to prevent inflation, in addition to other objectives of the Act, it was necessary to impose certain restrictions upon rents for rental housing accommodations in defense-rental areas. In the passage of this Act, with its amendments, Congress has enacted a program for the protection of a large segment of the people of our country, and any willful

transgression of this program would be wrongful and malicious, and would be a contributing factor in injuring the person and property of a great number of persons.

Sec. 35, Title 11 U.S.C.A., reads as follows:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are due as a tax levied by the United States, or any State, county, district, or municipality; (2) are liabilities for obtaining money or property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another, or for alimony due or to become due, or for maintenance or support of wife or child, or for seduction of an unmarried female, or for breach of promise of marriage accompanied by seduction, or for criminal conversation; (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy; or (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity; or (5) are for wages which have been earned within three months before the date of commencement of the proceedings in bankruptcy due to workmen, servants, clerks, or traveling or city salesmen, on salary or commission basis, whole or part time, whether or not selling exclusively for the bankrupt; or (6) are due for moneys of an employee received or retained by his employer to secure the faithful performance by such employee of the terms of a contract of employment."

 A reasonable construction of Sec. 35 of Title 11 leads to the conclusion that this statute will not permit the release in bankruptcy of a money obligation that was brought into existence because of the willful and malicious disregard for the rights of others. Causing "willful and malicious injuries to the person or property of an-

other" is a disruptive practice and is aggravated when it injures the person or property of a large number of people.

In defining what is embraced by "willful and malicious injuries to the person or property of another" we find in Tinker v. Colwell, 193 U.S. 473, 485, 487–488, 24 S.Ct. 505, 508, 48 L.Ed. 754:

> "In order to come within that meaning as a judgment for a wilful and malicious injury to person or property, it is not necessary that the cause of action be based upon special malice, so that without it the action could not be maintained."

And further:

> "* * * a wilful disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done wilfully and maliciously, so as to come within the exception.

> "It is urged that the malice referred to in the exception is malice towards the individual personally, such as is meant, for instance, in a statute for maliciously injurying or destroying property, or for malicious mischief, where mere intentional injury without special malice towards the individual has been held by some courts not to be sufficient. Commonwealth v. Williams, 110 Mass. 401. We are not inclined to place such a narrow construction upon the language of the exception. We do not think the language used was intended to limit the exception in any such way. It was an honest debtor, and not a malicious wrongdoer, that was to be discharged."

That it is the duty of all of us to observe the laws of our country is elementary, and when one violates a law which has as its purpose the protection of the public welfare, he commits an act that is against good morals since he engages in conduct that does not conform to the generally accepted rules which govern a society of people interested in promoting the welfare of each other.

So, therefore, it is concluded that a debt arising out of violation of the provisions of the Housing and Rent Act of 1947, as amended, concerning which the Court has made a finding that said violation was willful, is not dischargeable in bankruptcy for the reason that it falls within that classification of Section 35 of the Bankruptcy Act which excepts from discharge liabilities for the "willful and malicious injuries to the person or property of another".

Judgment may be entered accordingly.