**In the Matter of David Willis WEBB, Debtor.**

**Sara TYSON and Robert Tyson, Plaintiffs,**

v.

**David Willis WEBB, Defendant.**

**Bankruptcy No. 80–00258–Mac. Adv. Proceeding No. 80–0085.**

United States Bankruptcy Court, M. D. Georgia, Macon Division.

Nov. 3, 1980.

William Q. Bird and Philip E. Tribble, Bird, Scherffius, Flexner & Cronkright, P. C., Attys. at Law, Atlanta, Ga. for plaintiffs.

Joseph Weinberg, Atty. at Law, Atlanta, Ga. for defendant.

## MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF THE CASE

HENRY D. EVANS, Bankruptcy Judge.

The case sub judice arose as a complaint to determine the dischargeability of a contingent debt allegedly owed the plaintiffs,* Sara Tyson and Robert Tyson, by the defendant, David Willis Webb. The complaint alleged that as a result of an intentional and malicious act on the part of the defendant, the plaintiffs incurred medical expenses and loss of consortium for which the defendant was liable. The complaint prayed for a determination of the amount of the liability and that such liability be declared nondischargeable in bankruptcy, and was filed with this Court on May 19, 1980. The defendant answered on June 18, 1980, and the matter was finally set for hearing on November 4, 1980. On October 9, 1980 the defendant filed his motion for summary judgment, which motion was controverted by brief of the plaintiff on October 24, 1980. The matter was heard on October 24, 1980. From the pleadings, answers to interrogatories, depositions, and admissions of parties on file, the Court makes the following

### FINDINGS OF FACT

Sara Tyson, plaintiff herein, was beset by obesity and a mild depression as a direct result thereof prior to September of 1975. On September 9, 1975 Mrs. Tyson initially consulted Dr. David Willis Webb, defendant, concerning bursitis, but as a result of the specific inquiry of Mrs. Tyson discussed intestinal bypass surgery as a remedy for her obesity. Mrs. Tyson had tried other methods of losing weight, had spoken to at least two individuals concerning possible side effects of the operation, and knew from at least one outside source that the operation might be associated with an increased risk of death. Nonetheless, Mrs. Tyson was "determined" to have the sur-

---

* Because the action of Robert Tyson is concomitant to and dependant on the complaint by Sara Tyson, the decision deals with the basic complaint only.

gery whether she "lived another year or not." (See deposition of Sara Tyson–July 29, 1980, pages 16–20.) On or about September 29, 1975, Mrs. Tyson signed a consent form stating that she was to have intestinal bypass surgery. On October 1, 1975 the defendant performed intestinal bypass surgery on the plaintiff.

The pleadings do not allege any negligence or malpractice on the part of the defendant.

## CONCLUSIONS OF LAW

Taking only the undisputed testimony of the plaintiff, Sara Tyson, as a basis for the findings of fact, there is sufficient evidence to find for the defendant in the case sub judice. Since this is true, there is no genuine issue as to any material fact, and the entire matter becomes a question of law vis–a–vis whether or not the consent signed was valid.

■ In Georgia, the problem of informed consent has been treated statutorily. Ga. Code Ann. § 88–2906. It is well established law that the requirements of the statute do not necessitate a complete disclosure of "the risks of treatment," and the tenor of Georgia decisions is to hold an executed consent to specific surgery valid, minus any inducive misrepresentations. *Young v. Yarn*, 136 Ga.App. 737, 222 S.E.2d 113 (1925); *Winfrey v. Citizens etc. Nat. Bank*, 149 Ga.App. 488, 254 S.E.2d 725 (1979); *Watson v. Wortley*, 151 Ga.App. 131, 259 S.E.2d 138 (1979).

■ In the case sub judice, Sara Tyson, plaintiff, acknowledges having spoken to at least two persons on whom the particular operation had been performed, discussing at least one unpleasant side effect with them (diarrhea), and mentioning the same side effect to the defendant (deposition of Sara Tyson, July 29, 1980, page 42, lines 18–20.) She also acknowledges seeing at least one report that the life span of patients following surgery of the subject type was reduced to as few as four years. With that knowledge, she was still "determined to have it" (deposition of Sara Tyson, July 29, 1980,

page 20, line 2.), and she voluntarily signed a consent authorizing the very surgery performed. Now after complications have arisen, she wishes to sue the defendant, not for negligence or malpractice, but for performing the very operation she requested and signed a consent to have performed.

It is clear that as a matter of law there has been no damage to the plaintiff, Sara Tyson, and since the derivative suit of her husband falls with her action there is no debt for either of them to claim against the defendant. Nonetheless, with the legislative overruling of *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754; H.R. Rep. No. 595, 95th Cong., 1st Sess. 363 (1977); S.Rep. No. 989, 95th Cong., 1st Sess. 77–79 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787, and the necessity of showing specific willful and malicious intent to do harm to the plaintiff, the set of facts before the Court falls woefully short of nondischargeability even if nominal damages were present.