**In re Michael Blaine CLARK, Debtor.**

**AMERICAN NATIONAL BANK OF BRISTOW, OKLAHOMA, Plaintiff,**

v.

**Michael Blaine CLARK, Defendant.**

**Bankruptcy No. Bk–82–02082. Adv. No. 83–0010.**

United States Bankruptcy Court, W.D. Oklahoma.

June 13, 1983.

Albert C. Kelly, Bristow, Okl., and Gene M. Kelly, Tulsa, Okl., for plaintiff, American Nat. Bank of Bristow, Okl.

Jimmie N. Wilcoxon, Cushing, Okl., for debtor-defendant.

## DECISION

RICHARD L. BOHANON, Bankruptcy Judge.

The Bank brought this complaint seeking exception to debtor-defendant's discharge under 11 U.S.C. § 523(a)(4) and (6). In pertinent part these provisions provide that the debtor is not discharged from any debt for fraud and defalcation while acting in a fiduciary capacity or for willful and malicious injury by the debtor to the property of another.

The debtor was in the business of raising cattle.

The record shows that in September and October of 1980, in two separate transactions, he borrowed $111,500 from the Bank. He used these funds to purchase 172 cows and calves. The Bank acquired a valid security interest in the collateral which was perfected according to the Oklahoma Uniform Commercial Code.

In November 1980 the debtor sold all the cattle in two separate transactions. At the time of trial the unpaid principal balance of the two notes was $90,133. The Bank has not provided a signed statement releasing any of its interest in the collateral. See 12A O.S.1981 § 9–406. In addition the Bank's officers testified that it was not informed of the sale until long after the fact.

On the other hand the debtor says that he had consent from the Bank's president to sell the cows and deposited the sale proceeds in the Bank. He also testified that the reductions in principal balances resulted from his directions to Bank employees to charge his account specified amounts.

We must thus weigh the testimony to see if there can be a credible finding that the Bank consented to the sales resulting in a waiver that might have a bearing upon the § 523 objection.

The Bank's executive vice-president testified about funding the loans and their current balances. He says he had no knowledge of the sales until long after the fact. In this regard it appears that for some substantial period of time after the sale the debtor could not be found. A rancher-investigator stated that he was employed by the Bank to search for the cows and the debtor and could find neither. The Bank's president says that he made the particular

loans; that the debtor was acquiring these cows for breeding purposes, not for resale; and that he was neither informed of nor consented to the sale, learning that the cows were missing only after the debtor disappeared.

The debtor admits he sold the cattle but, significantly, is unable to produce any written proof indicating consent or release. He says that soon after the cows were purchased the market turned down and that he conferred with the Bank president about a sale and subsequently deposited the sale proceeds in the Bank. In this regard he produces some checks and deposit tickets. The most that can be said about this testimony is that a deposit to a checking account is not *ipso facto* payment on a note. The debtor does admit providing specific instructions for principal payments which have been properly credited by the Bank, showing he knew how to make payments on his notes.

To say the least the debtor's testimony concerning use of the sale proceeds is confusing. It does appear that he was engaged in other business activities but there is no convincing statement of use of the funds.

The most we can find from the record concerning waiver is that the debtor might have had a casual conversation with the president concerning the market's decline but we cannot find a consent to the sale or waiver of rights under the notes and security agreements on the part of the Bank.

These findings must then be examined in light of the exceptions to discharge provided in the Bankruptcy Code. 11 U.S.C. § 523(a)(6) provides an exception for willful and malicious injury by the debtor to the property of another. The debtor does not contest that the Bank had a security interest in the cows.

■ The Bank has been injured for its interest in the property of the debtor exists no longer. To be excepted, however, the debtor must be found to have committed the injury willfully and maliciously.

■ There can be no question but that the injury was willful for the sales were not accidental or unintentional. As regards the requirement of malice we refer to the thorough explanation provided in *In re McCloud,* 7 B.R. 819 (Bkrtcy., M.D.Tenn., 1980). The facts in that decision are strikingly similar. The debtor borrowed money from a bank, granted a security interest in cows and sold them without consent. The opinion contains a thoughtful explanation of the terms willful and malicious as construed under prior law and in light of the legislative history pertaining to § 523(a)(6). The Supreme Court in *Tinker v. Colwell,* 193 U.S. 473, 487, 24 S.Ct. 505, 509, 48 L.Ed. 754 (1904) has said that the term willful and malicious encompasses " . . . a wilful disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally . . ." The bankruptcy court then reviews legislative history showing that the Congress did not intend to overrule *Tinker.*

The debtor-defendant here willfully and intentionally disregarded what he knew his duty to be, wrongfully sold the cows without discharging his obligations to the Bank and thereby caused injury to the Bank. His conduct was therefore willful and malicious in the meaning of § 523(a)(6).

The Bank also urges the debts should be excepted for fraud or defalcation by the debtor acting in a fiduciary capacity. It contends that when the debtor sold the cows without consent he became a trustee required to hold the proceeds for the Bank's benefit. See 21 O.S.1981 §§ 1834, 1834.1 and 1834.2. It is, however, unnecessary to deal with this part of the Bank's contention.

It is, therefore, held that because the debtor sold the cows willfully and maliciously causing injury to the Bank the debt is within § 523(a)(6) and is not dischargeable.

■ Since the Bank seeks only declaratory relief that the debt be excepted from the discharge it is not necessary to compute the monetary relief to which the Bank may be entitled. We do point out, however, that the § 523(a)(6) exception applies to a debt

for actual injury suffered. The action sounds in tort and damages may or may not be different than the note balances. See *In re Howard,* 6 B.R. 256, 258 (Bkrtcy., M.D. Fla.1980).

This decision is prepared as the findings of fact and conclusions of law required by B.R. 752.

An appropriate judgment will be entered.