MARYLAND CASUALTY CO. *v.* FANT.

(*Nashville*, December Term, 1943.)

Opinion filed July 1, 1944.

H. H. CHITWOOD, of Nashville, for complainant-appellee.

C. VERNON HINES, of Nashville, for defendant-appellant.

MR. JUSTICE GAILOR delivered the opinion of the Court.

Defendant, E. J. Fant, who appeals, was, during 1932, employed by a wholesale grocery firm in Nashville, as a

city salesman, and as an incident of his employment he collected the accounts of the customers to whom he sold merchandise.

During 1932, he commenced to convert various amounts collected to his own use. These peculations continued for several months, and from a full and detailed statement or confession of Fant, which is in the record, there can be no doubt that these conversions were knowingly, willfully and maliciously made by him to the consequent injury of his employer.

The conversions were finally discovered and the Insurance Company paid the employer $500, the amount of the fidelity bond which it had issued to insure Fant's faithful accounting, and at the time of this payment the Insurance Company took an assignment from the employer by which it was subrogated to all rights of the employer against Fant.

Thereafter, in pursuance of its rights under the subrogation, the Insurance Company filed the original bill in this cause against Fant in the Chancery Court of Davidson County. After Fant, though personally served with subpoena to answer, had failed to enter his appearance, a *pro confesso* was taken, and final decree for $500 entered against him.

On this decree, several executions were issued and returned *"nulla bona."* When, however, a sum of money due him as wages at the Consolidated Vultee Aircraft, Inc., was impounded by garnishment on that corporation, Fant filed a petition in this cause by which he insisted that the executions had been improperly issued, because the debt upon which the judgment herein was rendered had been extinguished by discharge in bankruptcy. There is no dispute that the debt was scheduled in a petition in bankruptcy filed by Fant in the Federal Court at Nash-

ville, nor that he subsequently secured a discharge on said petition.

The Insurance Company answered said petition and denied that the debt was dischargeable on account of its nature under the provisions of the U. S. Bankruptcy Act, as it was in effect at the time of the discharge, alleging specifically that since the debt arose by reason of Fant's willful and malicious injury to his employer's property, the debt fell within the class of debts which are not dischargeable under 11 U. S. C. A., section 35, sub. a, as follows:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liable for obtaining money or property by false pretenses or false representations, *or for willful and malicious injuries to the person or property* of another, . . ."

In a written opinion which is a part of the record, the Chancellor upheld the contention of the Insurance Company, saying, after citing authorities:

"The Court is convinced that under these authorities the debt in question falls under the exceptions provided in Title 11, Subsection 2 [sec. 35, sub. a] of the Bankruptcy Act, and is not dischargeable."

In accord with this opinion a decree was entered sustaining the execution and directing that the sums of money impounded by garnishment be applied on the judgment of the Insurance Company.

From this decree Fant has appealed and made two assignments of error:

That the Chancellor erred in holding that the judgment of the Insurance Company (1) was not discharged, and (2) in holding that it came within the exceptions defined by Title 11, section 35, sub. a, exception (2), U. S. C. A.

The effect of a discharge in bankruptcy is to release the debtor from all provable debts, unless such debts fall within certain specified classes. Bankruptcy Act, 11 U. S. C. A., sec. 35, sub. a.

Clearly, the question here presented is limited to a determination of whether the judgment of the Insurance Company falls within exception (2) of Title 11, section 35, sub. a, *supra*. The cases cited and argument made on behalf of appellant with regard to exception (4) of section 35, sub. a, are not in point, and will not be considered, since first, the Chancellor's holding was not based on exception (4), and second, the appellee concedes that such exception is not applicable.

That the thefts of Fant from his employer's monies were willful and malicious, cannot be doubted from his detailed confession which is in the record. That such a course of action by an employee to the injury of his employer constitutes such injury as is not dischargeable under the Bankruptcy Act, is clear from all the authorities to which we have access.

"The rule fairly deducible from the leading cases may be said to be that the disposal of another's property without his knowledge or consent, done intentionally in disregard of what one knows to be his duty, to the other's injury, is a willful and malicious injury to property within the meaning of the Bankruptcy Act. The injury need not, according to the well settled rule, involve special or actual malice." 6 Am. Juris, Sec. 507, pp. 815, 816.

"Willful and wanton conversion of another's property may constitute a willful and malicious injury to property of another, the debt for which is not discharged in bankruptcy.

"Thus, the willful selling of a customer's stock by a bankrupt stockbroker comes within this exception. Simi-

larly, the conversion or embezzlement by an insurance agent of the balance of premiums collected by him after deduction of his commissions and expenses has been held to be willful and malicious injury to property within the meaning of the Bankruptcy Act." 7 Remington on Bankruptcy (5 Ed.), sec. 3552, p. 816.

Prior to the amendment of 1903 to the Bankruptcy Act, 11 U. S. C. A., sec. 35 note, it was necessary for the debt in subsection (2) to be in the form of a judgment to prevent its discharge. The cases containing what was then section 17, sub. a, subsection (2), however, clearly define the meaning of "willful" and "malicious" injury as used in the present Act. The same phraseology was used in the act prior to its amendment in 1903. In the case of *McIntyre* v. *Kavanaugh*, 242 U. S., 138, 37 S. Ct., 38, 61 L. Ed., 205, the earlier opinion in *Tinker* v. *Colwell*, 193 U. S., 473, 24 S. Ct., 505, 48 L. Ed., 754, is quoted with approval in this regard. The latter opinion embodies a complete brief on the meaning of "willful" and "malicious" as these words have been defined by the Supreme Court of the United States in cases under the Bankruptcy Act, and are quoted and applied in a case under the act as amended in *McIntyre* v. *Kavanaugh, supra.*

For further discussion of the distinction between conversion which is "innocent and technical" and so dischargeable, and that which is "willful and malicious," and so not dischargeable, compare the opinion of Justice CARDOZO, in *Davis* v. *Aetna Acceptance Co.*, 293 U. S., 328, 55 S. Ct., 151, 79 L. Ed., 393, 397.

A statement in the opinion of *Tinker* v. *Colwell, supra,* which we consider determinative of the issue here before us, is:

". . . a wilful disregard of what one knows to be his duty, an act which is against good morals, and wrongful

in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done wilfully and maliciously, so as to come within the exception." 193 U. S., at page 487, 24 S. Ct., at page 509, 48 L. Ed., 754.

We think the Chancellor was right in holding that appellant's debt arose from a willful and malicious injury to his employer's property. It was not, therefore, dischargeable in bankruptcy.

The assignments of error are overruled and the decree of the Chancellor is affirmed.

GREEN, C. J., and NEIL, CHAMBLISS, and PREWITT, JJ., concur.