HELMINIAK, Respondent, vs. PRZEKURAT, Appellant.

*April 10—October 14, 1924.*

*Husband and wife: Alienation of affections: Damages: Evidence: Infants as witnesses: Competency: How determined: Credibility: Appeal: Prejudicial error.*

1. In an action for the alienation of a wife's affections, evidence tending to impeach the virtue of the plaintiff husband is admissible in mitigation of damages.   p. 420.
2. The competency of an infant to testify must be determined by an examination of the child in court, and the question is addressed to the discretion of the trial court; the credibility of the witness is, however, for the jury.   p. 420.
3. The actual age of an infant witness, while not controlling, constitutes a vital factor in determining his competency.   p. 421.
4. Ordinarily in actions for the alienation of a wife's affections, the damages, both compensatory and punitory, are difficult to arrive at; and while no definite rule is or can be established upon which damages can be based, the amount awarded is largely in the discretion of the jury.   p. 422.
5. In such an action it was prejudicial error, in view of the large damages assessed, to exclude evidence of plaintiff's daughter, nine years of age but otherwise competent, as to sexual relations by plaintiff with his wife's sister, fourteen years of age, who looked after his home while his wife was absent, and of sexual relations between him and another woman.   p. 422.
6. It was also error to allow evidence of a witness that he had seen defendant, four years prior to the trial, jump out of a window, and heard a woman exclaim, "Skip! he's going to kill you!" it being too remote to show adulterous disposition and it not being shown that the exclamation was that of plaintiff's wife.   p. 422.
7. A telegram sent by a brother to the plaintiff while he was absent from home to the effect that plaintiff's wife and defendant were leaving was inadmissible, and a caution to the jury that its contents were not evidence could not eradicate its effect.   p. 423.
8. Where, three months after a divorce, plaintiff's wife and defendant assaulted the plaintiff, and on conviction of assault

Helminiak v. Przekurat, 184 Wis. 417.

defendant paid the fine imposed upon plaintiff's wife, plaintiff's evidence with reference to the assault was admissible to explain the conduct of defendant prior to the commencement of the action. p. 424.

9. The combined effect of a number of errors (any one of which considered alone might not be prejudicial) may operate prejudicially against a party and contribute materially to a failure of justice. p. 423.

APPEAL from a judgment of the circuit court for Portage county: BYRON B. PARK, Circuit Judge. *Reversed.*

This is an appeal by the defendant from a judgment in plaintiff's favor in an action for alienation of the affections of plaintiff's wife, coupled with criminal conversation.

The action was tried before a jury, and in the special verdict the jury found (1) that the defendant caused the plaintiff to lose the affection and society of his wife; (2) that the defendant was actuated by malice in depriving the plaintiff of the affection and society of his wife. By the answer to the third question compensatory damages were assessed at $5,000; and by the answer to the fourth question punitory damages were assessed at $6,000.

The court thereupon entered an order granting the defendant a new trial unless the plaintiff remit from the punitory damages as assessed by the jury the sum of $5,000. Plaintiff thereupon filed a written consent to the reduction of the punitory damages in accordance with the order, and judgment was thereafter entered in plaintiff's favor for the sum of $6,000 and costs, from which judgment the defendant has prosecuted this appeal.

For the appellant there was a brief by *J. R. Pfiffner* of Stevens Point and *Minahan, Minahan, Minahan & Duquaine* of Green Bay, and oral argument by *Mr. Victor I. Minahan* and *Mr. Pfiffner.*

For the respondent there was a brief by *Fisher & Cashin* of Stevens Point, and oral argument by *W. E. Fisher.*

The following opinion was filed May 6, 1924:

DOERFLER, J.   Numerous assignments of error are alleged by the defendant, some of which are trivial and for that reason will not be treated in this opinion.   During the course of the trial the defendant called as a witness one Theresa Helminiak, a daughter of the plaintiff, who was nigh nine years of age, to testify to sexual relations which existed during the summer of 1922 by the plaintiff with a sister of plaintiff's wife, fourteen years of age, who was requested to look after plaintiff's household while his wife was visiting in Chicago, and also to one other instance of sexual relations maintained between plaintiff and another woman subsequent to such period.   Plaintiff's counsel objected to the reception of testimony of this nature on the part of the witness, principally upon the ground of its being contrary to public policy and morality.   The preliminary examination of the witness disclosed that from the standpoint of intellectuality she was competent to testify, and that she was at least as capable of understanding her obligations as a witness as the average child of her age.   The testimony of this witness was offered by the defendant in mitigation of damages.   In ruling upon the competency of this witness and her testimony the court made the following statement:

"Then there is another reason; a reason that grows stronger and stronger with me would be that during the thirty or thirty-five years that I have been at the bar, the most dangerous testimony in matters of this kind, involving sexual relations, is an infant's testimony.   It is unaccountable how a child can lie and persist in lying on such propositions.   It is the history of this circuit . . . that men have been convicted and sentenced and punished on the perjured testimony of infants of tender years.   So I am going to sustain the objection."

The record further disclose that the court made a statement in the presence of the jury that in the fall of 1922 plaintiff commenced an action for divorce against his wife, charging adultery, and that the wife counterclaimed, charging adultery on the part of the plaintiff; that plaintiff's complaint was not established, but judgment was entered in the wife's favor on her counterclaim.    The refusal by the court to permit Theresa to testify is assigned as error by defendant's counsel.

There is ample authority to sustain the proposition that evidence of this nature, tending to impeach the virtue of the plaintiff, is admissible in mitigation of damages.    13 Ruling Case Law, p. 1496, § 547, and cases cited under notes 11 and 12.

In *State v. Juneau,* 88 Wis. 180, 59 N. W. 580, a conviction of the defendant was sustained upon the charge of gross lewdness on the testimony of a child five years and five months of age.    In that case it was held that the competency of the witness to testify must be determined by an examination of the child in court, and the question is addressed to the discretion of the trial court.    The credibility of such a witness is for the jury.

In the case of *Barnard v. State,* 88 Wis. 656, 60 N. W. 1058, a girl seven years of age was permitted to testify to a statutory rape committed upon her, and the conviction was largely sustained upon her testimony.    In that case the court said, referring to the infant's testimony:

"After she had been admitted to be sworn and testify, the credit due to her testimony was to be tested by the ordinary rules by which the credit of testimony is tried.    Her age, her intelligence, her manner on the stand, her contradictions, and all the incidents which go to test and determine the credit due to witnesses were applicable to her testimony. It could not be arbitrarily rejected.    It was to be weighed by the jury and given such weight as the jury deemed it justly entitled to."

In the case of *Van Salvellergh v. Green Bay T. Co.* 132

Wis. 166, 111 N. W. 1120, where a child six years of age sustained injuries by being struck by an electric car, the special verdict was largely based upon the testimony of the child. In that case the court said, among other things, referring to the child:

"She was not much above the age excluding her from testifying because too young to be able to recollect and state with a fair degree of certainty what happened. There is no arbitrary age limit excluding a child over four years old from testifying, the degree of intelligence shown in each case, after such age and up to fourteen, being the controlling factor, but precedents are not numerous of a child so young as the one here being allowed to testify. The most said on the subject in a recent work on evidence is that 'There are instances on record in which the testimony of children of five and six years of age has been received.' 3 Jones, Ev. § 738. . . . Where the court passes favorably on the question, the age of the child is yet an important factor in determining the weight to be given to the evidence."

The record in the instant case disclosed that the court's ruling in excluding the testimony of the witness was clearly not based upon her lack of intelligence, or upon her inability to properly relate the incidents for which she was called to testify as a witness. That the learned trial judge was actuated by the highest grounds of morality and public justice cannot be denied. That incidents may have occurred where innocent defendants were convicted on the perjured testimony of infants may be admitted. The history of jurisprudence discloses that such convictions are not confined to the testimony of infants, but that they have also occurred by reason of perjured testimony of adults. From the preliminary examination given the witness it appears that she was fully aware of the obligations of an oath and of her duty to testify to the truth. The actual age of the witness, while not controlling, nevertheless constitutes a vital factor in determining the competency of the witness.

It appears also that the court refused to permit the witness to testify, upon the ground that her testimony would

have a tendency to alienate her affections from her father. Such reason, however, is hardly tenable, for, assuming the truth of the incident to which the witness was called upon to testify, her respect and love and affection for her father had already been alienated by reason of the immoral and criminal exhibition on his part, practiced at a time when this infant was present. That the testimony, had it established the criminal intimate relations, would have had a material bearing upon the subject of assessment of damages by the jury, there can be no doubt, and it appears quite evident and logical that had such testimony been introduced the damages assessed would have been in a sum considerably smaller than those actually found. While ordinarily in an action of this nature the damages, both compensatory and punitory, are difficult to arrive at, and while no definite rule is or can be established upon which damages can be based, it has been held that the amount awarded is largely within the discretion of the jury. In view of the large damages both compensatory and punitory assessed by the jury, we are of the opinion that the exclusion of this evidence by the court constituted prejudicial error.

Error is also assigned because a witness by the name of Hoppa was called and testified that about four years prior to the trial he had seen the defendant jumping out of a window and heard a woman exclaim, "Frank, skip! He's going to kill you!" The court of its own motion ruled out this testimony, cautioning the jury not to consider it. There was no evidence to show that this exclamation came from the plaintiff's wife or that she was present at that time. The incident thus referred to is rather far-fetched and remote to prove an adulterous disposition on the part of the defendant. The incident could be attributed to many other causes than that of immorality. Besides, the occurrence was altogether too indefinite and uncertain, and in point of time too remote, to be of any probative force as evidence. It is contended on the part of defendant's counsel that the

evidence had a tendency to inflame the passions and preju-
dices of the jury; and that it did so affect the jury is made
manifest by the large damages as shown by the verdict.   De-
fendant's counsel also contend that it must be presumed
that plaintiff's counsel was aware of the incompetency of
this evidence and that the introduction of the same consti-
tuted error which could not but prejudice the rights of the
defendant, and that the ruling and remarks of the court
could not eradicate from the minds of the jurors the im-
pression made by this testimony.   While we agree that the
introduction of this evidence was error, however, in view
of the record, we would not deem it prejudicial if it were the
only error established.   It can readily be perceived that the
combined effect of a number of errors (any one of which
considered alone might not be prejudicial) may operate
prejudicially against a party and contribute materially to
a failure of justice.

In the month of October, 1922, the plaintiff, in order to
remove his wife from temptations on the part of the de-
fendant, sold his home at Stevens Point and went to Mus-
kegon, Michigan, to find employment and to establish a
new home.   He testified that while in Michigan he wrote
a number of letters to his wife, requesting a reply, but that
he received none; that he thereupon telegraphed to his
brother at Stevens Point inquiring about his wife, and in
reply received a telegram which read: "Laura leaving with
*Przekurat* to Washington.   Come at once."   Defendant
offered to permit plaintiff to testify that he got the telegram,
and in response thereto came to Stevens Point.   The court,
however, admitted the telegram, but ruled that it was not
proof of what it stated.   The admission of this telegram,
over the objection of defendant's counsel, was clearly error.
The mere caution to the jury that the contents of the tele-
gram was not evidence of the fact therein stated cannot be
deemed sufficient to eradicate from the minds of the jury
the effect of such evidence.   We repeat, in substance, what

we have said with reference to the preceding assignment of error, that this error standing alone would not be sufficient to warrant a reversal, but that, in view of the other errors, the combined force of such errors contributed materially in producing passion and prejudice against the defendant, which is reflected by the large amount awarded by way of compensatory and punitory damages by the jury.

On the 5th day of March, 1923, about three months after the judgment of divorce was entered in favor of the plaintiff's wife, the defendant and plaintiff's wife were arrested for participating in an assault upon the plaintiff.    Both plaintiff's wife and the defendant pleaded guilty to such assault, and the evidence shows that the defendant paid the fine for plaintiff's wife.    The court, over the objection of defendant's counsel, permitted the plaintiff to testify somewhat in detail with reference to this assault, and this ruling of the court is assigned as error.    In connection with this assault and the acts of the defendant in relation thereto the court instructed the jury as follows:

"The acts and conduct of Laura Helminiak after the decree of divorce are entirely immaterial except as they may explain the conduct of the defendant and Laura Helminiak as disclosed by the evidence prior to the decree, and are then only material if they are shown to be a part of a continuous line of conduct commencing prior to the commencement of the divorce action and continuing after the decree of divorce."

We are of the opinion that this evidence was properly admissible to explain the conduct of the defendant prior to the commencement of the action, and the court in express language limited the evidence on the subject for that purpose and that purpose only.    The admission of this evidence was not error.    30 Corp. Jur. 1161; *McCall v. Galloway,* 162 N. C. 353, 78 S. E. 429.

In view of the errors committed by the court, particularly that contained in the first assignment of error herein treated,

we conclude that the jury in the assessment of damages was influenced by passion and prejudice; that the first assignment of error constituted prejudicial error; and that the other errors herein found further contributed in producing such prejudice.

*By the Court.*—Judgment reversed, and the cause is remanded with directions for further proceedings according to law.

A motion for a rehearing was denied, with $25 costs, on October 14, 1924.