KUNDERT, Respondent, vs. JOHNSON, Appellant.

*December 9, 1954—January 11, 1955.*

For the appellant there was a brief by *Darrell MacIntyre,* attorney, and *R. R. Roggensack* of counsel, both of Madison, and oral argument by *Mr. MacIntyre.*

For the respondent there was a brief by *Waldemar E. Remde,* attorney, and *Martin M. Morrissey* of counsel, both of Madison, and oral argument by *Mr. Morrissey.*

MARTIN, J. The elements constituting a cause of action for alienation of affections are wrongful conduct on the part of the defendant, plaintiff's loss of affection or consortium of the spouse, and causal connection between such conduct and the loss. *Maahs v. Schultz* (1932), 207 W,is. 624, 242 N. W. 195.

Plaintiff and his wife Virginia were married April 3, 1943, while he was in the army. For some months the parties lived together while plaintiff was stationed at various camps in this country, and when he was sent overseas Virginia lived with her mother.

In 1946, after plaintiff was discharged from the service, the parties made their home in Madison. In 1949 a son was born. In 1950 the parties were separated for about three months during which time the husband commenced an action for divorce. Upon being reconciled about March 1, 1951, they moved into an apartment building owned by the defendant and from then until August of that year when the building was sold they knew him only as their landlord.

During the two years following March, 1951, Virginia and Mrs. Irene Schuette, a neighbor, became close friends and they spent considerable time visiting back and forth in each other's homes. Mrs. Schuette had known Johnson since 1946 when she bought her house from him.

Plaintiff contends that defendant's wrongful conduct commenced about March 17, 1953, when plaintiff and defendant met and, with Virginia, went out for a social evening. Johnson drove the Kunderts home and was asked in for a drink. Virginia called Mrs. Schuette to join the party and the four of them drank and danced until about 4 a. m. During the next three weeks they had a number of such parties and plaintiff testified that he would retire about 1 a. m. in order to be rested for work in the morning, leaving the defendant, Virginia, and Mrs. Schuette together. Plaintiff stated he was never aware of any wrongful conduct on the part of defendant during that period, except that after the third or fourth time he wondered why Johnson came so often.

About the middle of April Virginia told the plaintiff she was going to get a divorce and on May 1st she left their home and moved into Mrs. Schuette's house where she stayed until a few days before the divorce was granted on May 29th.

Mrs. Schuette testified that on one of their parties Virginia confided to her that she felt an affection for Johnson; that Johnson and Virginia held hands when the three of them were together; that prior to May 1st Johnson often dropped in at her house when Virginia was there. She testified that after Virginia moved in with her Johnson came to the house frequently and telephoned Virginia so often and at such length that the telephone company complained about their tying up the party line; that she heard defendant talking Virginia into getting a divorce and promising her a home

in Nevada, money, clothes, and jewelry. She further testified that several times during May she and Virginia called at the defendant's apartment and on one such occasion Johnson asked her to step outside the apartment and they were alone for about a half hour; that Johnson told her, "I can't make her give in when you are around all the time;" that she saw them kiss; that Johnson arranged for Virginia to see his lawyer about the divorce; that she finally told Johnson not to come to her house any more because he and Virginia were making things too obvious and she did not want to become involved.

There was testimony by another neighbor that she saw Virginia and Johnson together many times before the divorce action was commenced.

Mrs. Schuette's brother, Milton Hemling, testified that in the fall of 1952, while he was talking to Johnson outside his sister's home, Virginia came out of the house and Johnson said that some day he was going to break up her marriage; that in May, while Virginia was living at the Schuette home, Johnson was there with pictures of the southwest and telling Virginia he would take her there.

Johnson was divorced from his wife on April 10, 1953. Mrs. Johnson testified in the present action that on one occasion prior to their divorce Johnson told her he intended to marry Mrs. Kundert. Johnson testified that he could not recall making any such statement.

Johnson's testimony was evasive in many respects. He stated he did not recall ever suggesting to Virginia that she get a divorce; he did not think he ever advised her to do so; he did not remember calling Kundert names in Virginia's presence before the divorce proceedings were commenced, at least not while he was sober; he admitted Virginia came to his apartment several times with Mrs. Schuette but he did

not think it was in May. He testified that on the evening of May 29th, when the Kundert divorce was granted, he took Virginia out to dinner; that sometime in June he employed her to keep his books, collect rents from his properties, and do errands for him; and that on October 31st they were married at Dubuque, Iowa, and went to Las Vegas to live.

The evidence being in conflict, the jury had the right to believe whatever witnesses it would. It was within its province to draw from the testimony recited above the inference that prior to the time Virgina left the Kundert home Johnson had carried on a course of conduct which alienated her affections from her husband and caused her to leave him. In cases like this such conduct is not carried on openly. After the divorce, however, the testimony shows that Johnson and Mrs. Kundert were quite willing to have others see their interest in each other. Such evidence of their later conduct was admissible under these circumstances to show a continuous line of conduct commencing prior to plaintiff's loss of consortium and continuing thereafter. *Helminiak v. Przekurat* (1924), 184 Wis. 417, 198 N. W. 746; *Paulson v. Scott* (1951), 260 Wis. 141, 50 N. W. (2d) 376.

Defendant also contends that the damages awarded were excessive. It is true that the thought of divorce had entered the Kundert family picture prior to May, 1953, and there was considerable evidence on the question whether it was a happy marriage, but we must assume that the jury took such facts into consideration in setting its award of compensatory damages at $5,000. No punitive damages were awarded. There is no measuring stick by which to set a value on consortium, love and affection, and thus the damages are peculiarly within the province of the jury. The verdict was approved by the trial court and in our opinion there is no evidence of passion and prejudice on the part of the jury in arriving at such a figure.

*By the Court.*—Judgment affirmed.