**In re Marguerite BULLIS, Debtor.**

**Marilou J. BOWEN, Plaintiff,**

v.

**Marguerite BULLIS, Defendant.**

**Bankruptcy No. 82–00724.**
**Adv.No. 82–0693.**

United States Bankruptcy Court,
E.D. Wisconsin.

Feb. 23, 1983.

Robert Asti, Otjen & Van Ert, S.C., Milwaukee, Wis., for plaintiff.

Jack N. Eisendrath, Milwaukee, Wis., for debtor/defendant.

## MEMORANDUM DECISION

C.N. CLEVERT, Bankruptcy Judge.

This case involves the question of whether a pre-bankruptcy default judgment against the debtor for alienation of affections arose from a willful and malicious injury to plaintiff so that the debt may be excepted from discharge under 11 U.S.C. § 523(a)(6).

## FACTS

On February 23, 1971, the Waukesha County, Wisconsin, Circuit Court entered a default judgment in favor of Marilou J. Bowen and against Marguerite Bullis in a suit under § 246.07, *Wis.Stat.* (1971)[1] for alienation of affections and awarded damages in the amount of $5,175.42. Bowen apparently began garnishing Bullis' wages in January of 1982, and this appeared to have caused Bullis to file her voluntary Chapter 7 petition on March 15, 1982. Bowen then commenced this adversary proceeding on June 7, 1982. Afterward, the parties stipulated that there were no issues of fact to be decided and agreed to rest their cases on the default judgment without submitting further proofs.

## DISCUSSION

This court is apparently in the unprecedented position of having to determine whether a pre-bankruptcy default judgment for alienation of affections may be excepted from discharge on the grounds of "willful and malicious" injury to the person

---

1.  ... [A]ny married woman may ... bring and maintain an action in her own name, and for her own benefit, for alienation and the loss of affection and society of her husband. § 246.07, *Wis.Stat.* (1971).

Chapter 246, *Wis.Stat.*, was renumbered as Ch. 766, Laws 1979, c. 32, s. 49, effective July 20, 1979. Causes of action for alienation of affection are now barred by statute:

All causes of action for breach of contract to marry, alienation of affections and criminal conversation are hereby abolished, except that this section shall not apply to contracts now existing or to causes of action which heretofore accrued. § 768.01, *Wis.Stat.* (1979) [formerly § 248.01 effective April 12, 1972]

of another, as provided by § 523(a)(6) of the Bankruptcy Code.

▮ While alienation of affections judgments were non-dischargeable under the prior Act[2], the revised standard for examining the conduct of the debtor under the present Code requires that a mental element of intent exist before a debt is determined non-dischargeable.[3] This is true regardless of whether the court applies the "deliberate and intentional" standard with respect to the meaning of "willful" (enunciated in *In re Grace* and *In re Donny*[4]) or whether it applies the "special malice" standard with respect to the meaning of "mali-cious" (enunciated in *In re Hodges*[5]). Hence, we need to determine whether "willfulness and maliciousness" were required as a matter of law to sustain the action for alienation of affections.

Section 246.07, *Wis.Stat.* (1971), before it was repealed on April 12, 1972, by Chapter 220 § 22 of the Laws of 1971, required that the following elements must be proven in a cause of action for alienation of affections: (1) wrongful conduct[6] by defendant; (2) plaintiff's loss of affection or consortium; and (3) a causal connection between defendant's conduct and the plaintiff's loss.[7]

2. Under the 1898 Bankruptcy Act, judgments for criminal conversation and alienation of affections were not dischargeable. In *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754; 66 Kan. 172, 71 P. 318; 9 Am.B.R. 318 (1903), the Supreme Court described the conduct giving rise to such judgments as "willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally...." *Id.* at 487, 24 S.Ct. at 509. Such conduct, concluded the Court, "... may be said to be done willfully and maliciously, so as to come within the exception." *Ibid.* As a result of the *Tinker* decision, a "reckless disregard" standard developed with respect to the meaning of "willful."

3. Section 523(a)(6) of the 1978 Bankruptcy Code is consistent with § 17a(2) and (8) of the former Act. *See*, 3 *Collier on Bankruptcy*, ¶ 523.16 (15th ed. 1979). In both the former Act and the 1978 Code, the words "willful and malicious" were used in the conjunctive. Hence, *both* elements must be present in order for a debt to fall within the exception. However, despite the use of identical language in the 1978 Code, the Committee Reports of both the House and Senate contained a comment that under paragraph 6 "willful" meant "deliberate and intentional", and "[t]o the extent that *Tinker* held a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled." H.R.Rep. No. 595, 95th Cong., 1st Sess. 363–365 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 78–79 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5865, 6320–21.
Since the enactment of the 1978 Code, a line of cases has developed which disputes the import of this Congressional comment:
*Grand Piano & Furniture v. Hodges (In re Hodges)*, 4 B.R. 513, 6 Bankr.Ct.Dec. (CRR) 445, 2 Collier Bankr.Cas.2d (MB) 301 (Bkrtcy.W.D.Va.1980) (accepting the rejec-tion of the *Tinker* standard, but concluding that "maliciousness" meant an "intent to do harm."
*Borg-Wagner Acceptance Corp. v. Simmons (In Re Simmons)*, 9 B.R. 62, Bankr.L.Rep. (CCH) ¶ 67, 921 (Bkrtcy.S.D.Fla.1981) (Repudiating Congress' statement and holding that the *Tinker* standard controls).
Nevertheless, it should be noted that even though *Hodges* and *Simmons* were inconsistent in their holdings, they were consistent in their reasoning that under the new standard suggested by the Congressional statement, special or actual malice would be required.
The Wisconsin bankruptcy courts, like the *Simmons* court, have recognized that to require a finding of actual intent to do harm would place an insurmountable burden on creditors which would have the effect of rendering the section meaningless in most instances. *First National Bank of Neenah v. Grace (In re Grace)*, 22 B.R. 653 (Bkrtcy.E.D.Wis.1982) (adopting *Tinker* definition of malicious as wrongful and without just cause). See also, *Wisconsin Finance Corporation v. Ries (In re Ries)*, 22 B.R. 343 (Bkrtcy.W.D.Wis.1981); *Danekas v. Donny (In re Donny)*, 19 B.R. 354 (Bkrtcy.W.D.Wis.1982).

4. See Note 3, supra.

5. See Note 3, supra.

6. Wrongful conduct. Conduct which contravenes some duty which law attaches to relation between parties affected. *Duncan v. Lumbermen's Mut. Casualty Co.*, 91 N.H. 349, 23 A.2d 325, 326.
*Black's Law Dictionary*, 1446 (5th ed. 1979)

7. *Alaimo v. Schwanz*, 56 Wis.2d 198, 201, 201 N.W.2d 604 (1972); *Schneider v. Mistele*, 39 Wis.2d 137, 141, 158 N.W.2d 383 (1968); *Kundert v. Johnson*, 268 Wis. 484, 485, 68 N.W.2d 42 (1955); *Maahs v. Schultz*, 207 Wis. 624, 242 N.W. 195 (1932).

The statute did not require a plaintiff to show that the defendant intended to alienate the affections of his or her spouse. Moreover, none of the leading Wisconsin cases [8] nor the most recent Wisconsin jury instructions on alienation of affections [9] even mentioned intent.[10] So, regardless of how malice had to be proven in a Wisconsin alienation of affections case, the intent necessary to prove that a debtor acted willfully is lacking in this case. Even if the plaintiff's complaint in her suit for alienation of affection had recited the magic words "willfully, intentionally and maliciously" that would have been insufficient, for nowhere in the final judgment were such words incorporated. And, without specific findings of fact from the state court, this court cannot conclude that the state court's judgment was predicated upon a finding of "willful and malicious" injury employing either of the standards that have been applied under the 1978 Code.

Understandably, the parties have elected to rest their cases on the default judgment. After all, they are dealing with an eleven-year-old judgment and even older facts and circumstances. The potential unavailability of witnesses, not to mention lack of memory and stale evidence, perhaps influenced the parties' decision not to present testimony. Nonetheless, in choosing this route and agreeing that there were no issues of fact, they have effectively closed the door to the introduction of evidence to prove willfulness and maliciousness. This was the case in *In re Kasler,* 611 F.2d 308 (9th Cir.1979). There both parties rested their cases on a judgment obtained in a prior arbitration proceeding involving libel and trade disparagement, and the court found that under California law, libel and trade disparagement did not include "willfulness" as used in the bankruptcy sense. Accordingly, the Court of Appeals affirmed the holdings of the District Court and the Bankruptcy Court discharging the debt. This court hastens to add that this decision is limited to the facts and circumstances presented.

Based on the foregoing, this court is compelled to conclude that the 1971 judgment finding the debtor liable for alienation of affections is dischargeable and that the complaint in this case must be dismissed.

---

8. See Footnote 7, supra.

9. Wis.J.I.—Civil, 2700 (1969).

10. But see, 41 Am.Jur.2d, *Husband and Wife,* § 470 (1968) and cases cited n. 15.). Prosser discussed the meaning of intent saying:

> The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way that the law will not sanction. . . .
>
> To result in liability, the defendant's act must be a voluntary one. . . . Its legal character must depend upon the actor's surroundings, and his state of mind with respect to them. His state of mind may involve many things: . . . 'Intent' is the word commonly used to describe the desire to bring about the physical consequences, up to and including the death; the more remote objective which inspires the act (shooting) is called 'motive.'
>
> . . . Intent, however, is broader than a desire to bring about physical results. It must extend not only to those consequences which are desired but also to those which the actor believes are substantially certain to follow from what he does. . . .
>
> On the other hand, the mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent. The defendant who acts in the belief or consciousness that he is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, but it is not classed as an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. Apparently the line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable man would avoid, and becomes a substantial certainty. Prosser, *Law of Torts,* § 8, 1971 (4th ed.) (Hornbook Series)