In the Matter of Howard Brent SADWIN aka Howard Sadwin and Linda Pauline Sadwin, Bankrupts.

Dr. Thomas A. GORNALL, III, Plaintiff,

v.

Howard Brent SADWIN aka Howard Sadwin and Linda Pauline Sadwin, Defendants.

Bankruptcy Nos. 78–1270 T, 78–1271 T.

United States Bankruptcy Court, M. D. Florida, Tampa Division.

April 16, 1980.

Stanley M. Lane, Tampa, Fla., for plaintiff.

Allan C. Watkins, Tampa, Fla., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION DETERMINING DISCHARGEABILITY

ALEXANDER L. PASKAY, Bankruptcy Judge.

When man bites dog, that is news. When dog bites man, it is not news unless the victim of the bite is a veterinarian and he is bitten by his patient. This is not unusual either and would not be noteworthy by itself except where the owner of the patient

is sued by the veterinarian. That is not only news, but no doubt adds an unusual twist to an old but not otherwise very interesting encounter between man and beast.

At this point one should wonder what this has to do with the bankruptcy court, especially since neither the vet, nor the dog named Hashish has ever had any financial difficulties as far as it appears from the record. However, since the owner of Hashish decided to seek relief in the bankruptcy court, most notably an absolution from the burden imposed upon him by a state court through a judgment as a result of the unfortunate encounter of the vet with Hashish, the matter immediately became the concern of this Court.

This is so because the victim of the not overly affectionate behavior of Hashish, upon hearing that the owners of Hashish had the gall to escape the legal consequences of the judgment obtained by the vet against them through the discharge generally available to bankrupts, filed a complaint to determine the dischargeability of the debt pursuant to Sec. 17c of the Bankruptcy Act. The claim of non-dischargeability is based on Sec. 17a(8) of the Bankruptcy Act and asserts that the judgment against the bankrupts represent a liability for a willful and malicious injury to the person.

The underlying state court judgment was entered by default in the amount of $77,-829. The plaintiff initially contended that the state court default judgment was res judicata and that this Court was confined to a review of the state court judgment. However, this Court in its August 30, 1979 order on motion for summary judgment held that the doctrine of res judicata does not apply and that the bankrupts could submit additional evidence so that this Court could determine the true nature of the plaintiff's claim. See *Brown v. Felson*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

The salient facts of this controversy are basically without dispute, although two matters will be discussed below in greater detail, both of which are supposed to be relevant to the controversy, according to the Defendant.

At the time pertinent to this controversy, Howard Brent Sadwin and his wife, Linda Pauline Sadwin, resided in Seattle, Washington and were the owners of a German Shepherd who, according to the Plaintiff, is appropriately named Hashish since Hashish means "assassin" in Arabic. The Plaintiff, Dr. Thomas A. Gornall, III is a veterinarian residing in Seattle, Washington. In May of 1976, the Sadwins, who lived in an apartment house, were charged and subsequently found guilty of maintaining an animal nuisance in violation of the City Code of Belleview, a suburb of Seattle, Washington. This charge was based on certain complaints made by neighbors that Hashish barks, and at times jumps at persons while restrained on a leash. However, there is no evidence in this record which indicates that Hashish has bitten anyone prior to the instance which is the crux of this present controversy. There is evidence in this record to the contrary, that is, Hashish has never bitten anyone other than Dr. Gornall, the Plaintiff involved in this controversy.

Hashish having developed a skin rash on his underbelly and an ear infection, was taken by the Sadwins to Dr. Gornall in June of 1976. According to Mr. Sadwin, at this time they discussed the animal nuisance charge with Dr. Gornall who first denied and then stated that he did not recall such a conversation. Dr. Gornall examined Hashish at this occasion, who showed no vicious tendencies and behaved properly during the examination. Dr. Gornall prescribed some ointment for the rash, but since the rash did not subside, on October 2, 1976, the Sadwins took Hashish back to Dr. Gornall for additional treatment. Inasmuch as the rash was located primarily on the underbelly of Hashish, Dr. Gornall instructed the Sadwins to have Hashish lie down on his side on the floor at the examining room in order to enable Dr. Gornall to inspect the rash more closely. To accomplish this, Mr. Sadwin held the head of Hashish while Dr. Gornall knelt on the back of the animal and commenced to examine the skin rash on the

stomach of the dog. While Dr. Gornall was in the process of examining Hashish, the dog suddenly freed its head and struck Dr. Gornall in the face and bit him in the lip area. There is a strong dispute whether or not the dog merely reacted to an offensive and painful pressure in a sensitive area or jumped at the vet without any provocation and for no reason at all. The first possibility is supported by Mr. Sadwin's testimony and the second is, of course, supported by the vet who denies that he touched the genitalia of the dog.

Shortly thereafter, Dr. Gornall filed a civil suit for damages and obtained a judgment in the amount of $77,829 by default. Subsequently, the Sadwins moved to Florida and on November 7, 1978, filed a voluntary petition for bankruptcy, duly scheduling the obligation owed by them to Dr. Gornall by virtue of the default judgment. The evidence further indicates through the testimony of an expert witness that, while dog bites are occupational hazards in the profession of the vet, they are primarily considered to be acceptable only if the bites are on the hand and not if they are on the face.

Since the issue of liability has already been resolved in order to sustain the claim of non-dischargeability under Sec. 17a(8) of the Bankruptcy Act, the Plaintiff must show that the liability is the result of willful and malicious conduct on the part of the Bankrupts.

In considering these elements the Supreme Court in the case of *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) stated that:

> "It is not necessary in the construction we give to the language of the exception in the statute to hold every willful act which is wrong implies malice. . . ."

The Court defined "wantonly" as:

> "Means without reasonable excuse and implies turpitude, and an act to be done wantonly must be done intentionally and with design, without excuse and under circumstances evidencing a lawless destructive spirit . . . ."

The Court is not unmindful of a series of cases cited by the Plaintiff which held that debts created by judgments obtained against dog owners for injuries sustained from dog bites were liabilities for willful and malicious injuries within the meaning of Sec. 17a(8) of the Bankruptcy Act. *Yackel v. Nys*, 258 A.D. 318, 16 N.Y. S.2d 545 (1939); *Humphreys v. Heller*, 157 Misc. 568, 283 N.Y.S. 915 (Sup.1935). It should be noted, however, that the cases cited by the Plaintiff are state court decisions which were rendered prior to the 1970 amendments to the Bankruptcy Act which accorded the bankruptcy court exclusive jurisdiction to determine the issue of dischargeability of debts allegedly falling within Sec. 17a(2), (4) or (8) of the Bankruptcy Act. Furthermore, in the cases cited, unlike the instant case, the dog owners had knowledge of the dog's vicious nature. To establish absolute liability either by common law or by virtue of a statute as to the owner of a dog is not the same as to establish the elements of willfulness and malice which are indispensable elements of a claim of non-dischargeability under § 17a(8). To sustain a claim of dischargeability non-dischargeability, the Plaintiff must establish either that the Bankrupts actually harbored an ill will and malice toward the injured party and in furtherance of his hostility exposed the third party to the dog knowing that the dog will bite the third party whether excited or not or the owner willfully and knowingly put the dog in the position in which he knew that there was a great likelihood that he would harm others.

In the present instance, the record is totally devoid of any evidence that these Bankrupts harbored any ill will toward the Plaintiff or that they brought Hashish to the Plaintiff knowing that the vet will not be able to handle Hashish and being aware of the dogs vicious propensities, were reasonably certain that the dog would attack the Plaintiff during the treatment. Even if the Sadwins were aware of the unpredictability of Hashish, they were perfectly justified in assuming that the proper place to take a sick dog is to a vet and that he will know how to treat and handle the dog.

Obviously, a vet is supposed to be trained to handle his patients and if a vet does not know how to handle an animal during treatment, the treatment of which he accepted, he should not be heard to complain if the animal causes injuries to the vet during this treatment. Animals, even with known vicious propensities, are entitled to treatment and if a vet is apprehensive that a dog that is known to have vicious tendencies might harm him, he is free to decline to render the services requested and should restrict his practice to treating small, docile animals such as canaries, hamsters and the like.

In light of the foregoing, just because the Bankrupts may be liable to the vet for the injuries he suffered, this liability cannot be characterized as a result of willful and malicious conduct on their part within the meaning of the excepted provision of § 17a(8) and, therefore, the claim of non-dischargeability cannot be sustained.

A separate final judgment in accordance with the foregoing will be entered.