Carol Dean WILSON, 5441 West Route 29, Urbana, Ohio 43078, Mabel M. Wilson, 5441 West Route 29, Urbana, Ohio 43078, Plaintiffs,

v.

Ronald F. GENTIS, 5562 West Route 29, Urbana, Ohio 43078, Sue E. Gentis, 5562 West Route 29, Urbana, Ohio 43078, Defendants.

In the Matter of Ronald F. GENTIS, Sue E. Gentis, Debtors.

Bankruptcy No. 3-80-01072.
Adv. No. 3-80-0366.

United States Bankruptcy Court,
S. D. Ohio, W. D.

Sept. 18, 1981.

John R. Butz, Springfield, Ohio, for defendants.

Paul D. Malina, Springfield, Ohio, for plaintiffs.

Carl Juergens, Springfield, Ohio, trustee.

Betty Busch, Librarian, Montgomery County Library, Dayton, Ohio.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

This proceeding is before the court upon the Complaint filed on 10 July 1980 by Carol Dean Wilson and Mabel M. Wilson against Debtors, Ronald F. Gentis and Sue E. Gentis; the Answer of Defendants; a Pretrial Order entered May 7, 1981; evidence adduced at the trial on June 23, 1981; Plaintiffs' Proposed Findings of Fact and Memorandum of Law filed July 14, 1981; Defendants' Proposed Findings of Fact and Memorandum of Law filed 7 August 1981; and Plaintiffs' Reply Memorandum filed on August 13, 1981.

### FINDINGS OF FACT

The Debtors/Defendants, husband and wife, filed their petition for relief under Chapter 7 of Title 11, United States Code, on 18 April 1980.

Plaintiffs owned a farm in Champaign County, Ohio of approximately 210 acres, which was operated since the early 1970's by the Defendants (who are son-in-law and daughter of Plaintiffs), on a typical "share farming" arrangement. All expenses were shared equally between the Parties and the resulting crops or net proceeds were likewise divided equally. Plaintiffs regularly had joined in raising farming capital by encumbering personal assets, including the farm.

The contractual details were handled in a very informal manner, all parties residing on the "Wilson Farm," although their residences were separated on different parts of the farm. The Defendants also received their residence rent free. No accounting methods or report requirements were documented by a written contract and apparently Ronald F. Gentis, who actually operated the farm, handled all funds with the understanding that there would be a "special farm account" to be used only for farm business purposes.

The harvested grain was stored in metal storage bins with an approximate capacity of 95,000 bushels and located about three hundred yards from the residence of Plaintiffs.

In late 1979, or early 1980, Defendant Ronald F. Gentis (hereinafter Ronald) sold all of the grain in the bins allocated to Plaintiffs, valued in the sum of $84,322.05, to a grain dealer, Faulkner Brothers of Urbana, Ohio. At the time, even though Defendants were in serious financial straits, they did not advise Plaintiffs of the disposition of the grain until about February, 1980, although Ronald had previously obtained $1,600.00 from Carol Dean Wilson

on December 31, 1979, in payment for Plaintiffs' share of the grain drying expense.

The grain sold was subject to a security interest to The Ohio Grain Company of Mechanicsburg, Ohio and to the U. S. Department of Agriculture, Agricultural Stabilization and Conservation Service (Commodity Credit Corporation), upon which obligations Plaintiffs were also jointly and severally liable. These encumbrances were not paid from the grain proceeds.

All of the proceeds from the sale of Plaintiffs' grain, except approximately $3,000.00, was deposited in the usual "Farm Account," a checking account with the First Central National Bank, St. Paris, Ohio. This account was entitled: "Ronald F. Gentis—Farm Account." The deposits to the account for the month of December, 1979, are, as follows:

| DATE | AMOUNT OF DEPOSIT |
|---|---|
| December 3, 1979 | $ 13,784.71 |
| December 5, 1979 | 5,035.07 |
| December 8, 1979 | 2,000.00 |
| December 15, 1979 | 9.00 |
| December 15, 1979 | 325.44 |
| December 15, 1979 | 430.00 |
| December 15, 1979 | 2,500.00 |
| December 15, 1979 | 2,995.00 |
| December 15, 1979 | 4,000.00 |
| December 15, 1979 | 18,000.00 |
| December 15, 1979 | 25,000.00 |
| December 21, 1979 | 1,843.23 |
| December 22, 1979 | 3.00 |
| December 22, 1979 | 20,000.00 |
| December 24, 1979 | 5,000.00 |
| December 28, 1979 | 1,925.31 |
| December 31, 1979 | 1,550.00 |
| Total Deposits December 1979 | $ 104,420.76 |

In addition to the December deposits, there were deposits in November, 1979 of approximately $60,000.00; on January 8, 1980, in the sum of $21,930.74; and on January 15, 1980, in the sum of $25,000.00.

Ronald admitted that at the time he sold Plaintiffs' grain he planned to repay for same by refinancing his farming operation through Miami Valley Production Credit Association as he had done in past years. When he sought such a loan in early 1980, the loan application was refused.

Ronald was forced into disclosing the disposition of the grain shortly before a "family" gathering called in February, 1980, precipitated by his failure to obtain a loan from Miami Valley Production Credit Association in early 1980 and a lawsuit against Carol Dean Wilson on his joint and several liability covered by the security interests on the grain.

Being a family business, all of the parties had conducted the business without the formalities and accounting procedures usually in arms-length dealings. Ronald had during the years past always handled the grain sales. Furthermore, there is no evidence that Sue E. Gentis either participated in the dispositions, or was even aware of the sales until somewhat later.

The Defendants, in operating the farm, were afforded unlimited discretion as to purchases and sales for farm purposes. There is no evidence that the Plaintiffs required any consultation or explanation, despite overwhelming farm indebtedness. There is no evidence that the very inadequate business arrangements ever required the specific allocation of funds to any particular debts by Defendants. Also, various capital improvements were installed by Ronald on the Wilson farm from time to time.

During the course of the terminal business operations, leading to hopeless insolvency and bankruptcy, Ronald made numerous purchases from the "Farm Account" for strictly pleasure and family purposes, such as for snowmobiles for each member of the family.

Looking to the schedules filed in the case and the obligations listed, total secured claims are shown in the amount of $584,429.18 (including those secured by the grain sold as collateral) and total unsecured claims without priority in the amount of $677,955.13 (including the amounts owed to Carol Dean Wilson and Mabel Darlene Wilson, listed at $215,000.00 to each).

The total of unsecured claims listed is in the amount of only $47,955.13 if the claims by Plaintiffs for sale of the grain are deleted.

There is no evidence whatever that Sue E. Gentis was directly involved in the farm management or had any particular knowledge of the operations, other than being the wife of Ronald F. Gentis and as such signing security agreements. She could not and did not draw checks on the "Ronald F. Gentis—Farm Account."

The account records demonstrate that checks were drawn on this account from the proceeds of the sale of Plaintiffs' grain; however, the purpose of each draw is not noted on the checks and it is somewhat tenuous to tabulate the exact monetary amounts and the respective purposes from the evidence. Such personal debts paid, nevertheless, total at least $10,900.00, as clearly demonstrated by the evidence.

The evidence likewise is not entirely clear as to the payment of expenses for a livestock business conducted independently by Ronald and the proper allocation of expenses attributable to this purpose. Hence, no findings of fact can now be made in this respect.

## CONCLUSIONS OF LAW AND FACT

Plaintiffs urge that Defendants are not entitled to a discharge of indebtedness based upon the disposition of Plaintiffs' share of grain, in the amount of $84,322.05, in violation of 11 U.S.C. § 523(a)(6) "for willful and malicious injury by the debtor to another entity or to the property of another entity." It is also urged desultorily that removal of the grain from the bins was "larceny" as contemplated by 11 U.S.C. § 523(a)(4).

Defendants urge that the intent necessary to establish a willful and malicious conversion cannot be imputed or attributed vicariously to a spouse because of the actions of the other spouse, citing the decision of *In Re Donald Ernest Cooper, Case No. 72–326–D (at Dayton)* and *28 O.Jur.2d Husband and Wife, at § 103.* Further, that the facts do not establish "malice and deliberation" as to either Defendant, as connoted in dischargeability litigation.

The almost impossible and impractical burden of proof imposed to show "willful and malicious" intent in the personal use of property, to the detriment of another entity's interests, generally encompassed in civil litigation as a "conversion," is not necessarily the *sine qua non* if 11 U.S.C. §§ 523(a)(4) and 523(a)(6) are read *in pari materia* to confront the multifarious situations contemplated by the Congress.

### A

The conduct of the farm business operations substantiate the fact that sales of crops were handled in past years in the same fashion as the transactions now in litigation, by agreement of the parties, with only an accounting to Plaintiffs for their shares' proceeds. In addition to these past business methods are the physical details that the grain storage bins were in easy view of the residence of Plaintiffs. There is no evidence whatever that Defendant, Ronald F. Gentis, was not authorized to market the grain for proper farm purposes. Hence, it must be concluded that the sale of Plaintiffs' grain, as such, was not *per se* evidence of a willful and malicious injury to property.

Certain basic legal principles to be applied *instanter* have been discussed at length in the decision by this Court under the caption of *Ohio Grain Co. v. Gentis*, 10 B.R. 209 (Bkrtcy. Ohio 1981), and will not be labored herein. The Congress has overruled the "reckless" or "utter disregard" standards. Maliciousness no longer encompasses a standard of gross negligence as judicially interpreted under section 17(a)(2) of the Bankruptcy Act and *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). "Willful" under the Code, therefore, connotes "deliberate or intentional." See *H.R.Rep.No.595, 95th Cong., 1st Sess. 77–79 (1978).*

Within the parameters of these relaxed standards the issue *sub judice* is to examine the established facts from which to deduce a "willful and malicious" intent.

The Bankruptcy Code exception from a discharge under 11 U.S.C. § 523(a)(6)

for "willful and malicious injury" to another person or his property for practical purposes now requires an overt, objective act of both malice and intent (such as an assault and battery or a physical trespass), in light of the Congressional purpose to overrule *Tinker v. Colwell* (1904) 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754. We have already determined that the sale by Ronald of his own share of the grain was not with the requisite malice and intent to harm the secured parties, merely because the security interests were not paid.

Even though the "injury" under 11 U.S.C. § 523(a)(6) covers a willful and malicious conversion (See 95th Cong.Rec. H11096 (Sept. 28, 1978) Brk-L Ed. Legislative History § 81:3) the objective strictures mentioned previously dictate that such a category must be read *in pari materia* with 11 U.S.C. § 523(a)(4), covering "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny ..." to rationalize the type "injury" involved in most ordinary business transactions.

Hence, it is necessary to look beyond the mere fact of the sale of the grain of Plaintiffs (the injury) to the resulting benefits and ultimate purposes effected. In the instant case, payment of the farm indebtedness was the mutual end for both Plaintiffs and Defendants, thereby negating any special enrichment to Defendants or malice. Discounting capital improvements to the real estate accruing to Plaintiffs, as real estate owners, both profits and losses were to be shared equally. There was not only no contractual restraints on the disbursement of funds by Ronald as operator of the farm; but, also, there was a long and extensive practice of complete business discretion delegated by Plaintiffs. To a degree, Plaintiffs were participants in the resulting financial fiasco.

In fact, business was operated for many years more upon a foundation of faith among family members than sound accounting and business methods. Furthermore, the sale of the grain now in question was not the terminal act leading to bankruptcy; rather, conditions of insolvency had been long developing. It is unfortunate that the Parties make no effort now to face realities and restore family faith.

### B

█ The term "defalcation" as employed in the statute connotes more than an act or instance of constructive conversion. It encompasses, in the opinion of this Court, also a failure to meet a promise or an expectation by a debtor acting in a fiduciary capacity. The Congressional purpose is not ambiguous in this regard. In changing Bankruptcy Act § 17(a)(2) and enacting Code § 523(a), "Paragraph (4) excepts debts for embezzlement or larceny. The deletion of willful and malicious conversion from § 17(a)(2) of the Bankruptcy Act is not intended to effect a substantive change. The interest is to include in the category of non-dischargeable debts a conversion under which the debtor wilfully and maliciously intends to borrow property for a short period of time with no intent to inflict injury but on which injury is in fact inflicted." H.Rep.No. 95–595, p. 364, U.S.Code Cong. & Admin.News 1978, 5787, 6320.

Looking to the facts herein, we note that Defendant, Ronald F. Gentis, deliberately converted funds entrusted to his use as farm manager to his own personal use, concealing the fact from Plaintiffs under a scheme of borrowing funds to repay the amounts spent in bad faith before being discovered, with no intent to inflict injury. This Court deems such action and scheme to be within the clear meaning of Congressional intent, acknowledging the confusion of the Lewis Carroll semantics employed in traditional judicial interpretation of the statutory language. See *3 Collier on Bankruptcy (15th ed.)* ¶ 523.14.

Ronald initially obtained control over the farm assets, including "Plaintiffs' share," by the owners' consent. This consent extended to use of these assets to pay farm expenses. Such consent did not contemplate use of farm assets and the farm account for any other purpose such as personal family expenditures. The surreptitious sale and use of Plaintiffs' share for

personal gain evidences a willful and malicious design. The confused semantics traditionally employed in interpreting the applicable exceptions to a bankruptcy discharge are put in more practical focus by the statutory definition of "Theft" in Ohio (which includes conversion, embezzlement, larceny by trick, theft by deception, and similar prior statutory and common law offenses). The intent required is commensurate with the offenses described in 11 U.S.C. §§ 523(a)(4) and 523(a)(6) for practical judicial application and implementation of the Congressional purpose. See Ohio Revised Code § 2913.02 which defines the offense, as follows:

§ 2913.02 Theft.

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either:

(1) Without the consent of the owner or person authorized to give consent;

(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

(3) By deception;

(4) By threat.

This statutory definition of "Theft," which covers a plethora of former offenses of which the gist was larceny, embezzlement, conversion, fraud or false pretense (See § 2913.02 Legislative History: 134 v H 511. Eff. 1–1–74 and Committee Comment), leads to a focus on the facts and obviates the persistent preoccupation with the question of distinguishing various fiduciary capacities and the niceties of definitions of the crimes of "embezzlement, or larceny."

*ORDERED, ADJUDGED AND DECREED*, that the Complaint against Defendant, Ronald F. Gentis, seeking a judgment pursuant to 11 U.S.C. § 523(a)(6) for willful and malicious injury by the debtor to another entity or the property of another entity should be denied and dismissed.

*ORDERED, ADJUDGED AND DECREED*, that judgment should be awarded to Plaintiffs, Carol Dean Wilson and Mabel M. Wilson, against Defendant, Ronald F.

Gentis, for the proceeds from the sale of Plaintiffs' grain diverted to personal and family expenses from the "Farm Account," pursuant to 11 U.S.C. § 523(a)(4).

*ORDERED, ADJUDGED AND DECREED*, that the Complaint against Defendant, Sue E. Gentis should be denied and dismissed for failure to sustain the burden of proof under both 11 U.S.C. § 523(a)(4) and (6).

*ORDERED*, that counsel for all parties meet with the court to journalize a proper judgment entry.